

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00186-CV

_____

OLD AMERICAN INSURANCE COMPANY, Appellant

v.

LINCOLN FACTORING, LLC, Appellee

On Appeal from County Court at Law No. 1
Tarrant County, Texas
Trial Court No. 2015-005979-1

Before Gabriel, Kerr, and Birdwell, JJ.
Opinion by Justice Birdwell

## OPINION

Lincoln Factoring, LLC, the assignee of a portion of benefits under a life insurance policy, filed a lawsuit that principally concerned the timeliness of appellant Old American Insurance Company's payment of the benefits. Old American had insisted on receiving a final, complete death certificate that specified the insured's cause of death before paying the benefits, which it paid during the pendency of the litigation; Lincoln Factoring had insisted on receiving the benefits upon proof of the insured's death. Proceeding under a theory that Old American paid the benefits eight months too late, Lincoln Factoring pleaded claims for violations of chapters 541 and 542 of the Texas Insurance Code, violations of the Deceptive Trade Practices-Consumer Protection Act (DTPA), breach of contract, and breach of the common law duty of good faith and fair dealing. Resolving opposing motions for summary judgment, the trial court's final judgment awarded Lincoln Factoring treble damages, attorney's fees, and interest—but no actual damages—for Old American's failure to promptly pay the benefits. On grounds of legal insufficiency and standing, we conclude that as a matter of law, Lincoln Factoring cannot recover damages on the claims it pleaded. We therefore reverse the trial court's judgment and render a take-nothing judgment.

## Background

Rebecca Barnes bought a life insurance policy from Old American in 2011. The policy carried a general benefit of $10,000 upon her death and an additional

2

$10,000 benefit upon proof that her death was "accidental" as defined by the policy. Old American agreed to pay the death benefit when it received proof of Barnes's "covered death." The policy did not contain a homicide exclusion—no language expressly precluded the payment of benefits to a beneficiary who killed the insured. While the policy excluded coverage if Barnes committed suicide within two years of the policy's effective date, she was still living two years after she bought the policy, and this exclusion therefore became inapplicable.

Barnes died on September 28, 2014. Her original, incomplete death certificate, issued by the District of Columbia, where she resided at the time of her death, stated that the manner of her death was pending investigation.

On October 12, 2014, Frank Howard—Barnes's fiancé and the policy's sole beneficiary—assigned his entitlement to $4,725 of the proceeds to Payne Support Services, a funeral home.[1] Howard authorized Payne Support Services or its assigns to act for him "with full power to make collection of, compromise, settle[,] and [receive] . . . the proceeds" of Barnes's policy. On the same day, Payne Support Services assigned its entitlement to the $4,725 in proceeds to Lincoln Factoring. Lincoln Factoring sent the notarized assignments and the claim form to Old American. Howard also assigned the entitlement to $1,884.75 of the proceeds to Heritage

---

[1]*See* Tex. Est. Code Ann. § 122.201 (West Supp. 2018) ("A person who is entitled to receive property . . . as a beneficiary under a life insurance contract . . . may assign the property or interest in property to any person.").

Memorial Cemetery, which reassigned that entitlement to American Capital Funding, LLC.[2]

On October 21, 2014, Lincoln Factoring sent Old American a letter purporting to confirm a verbal representation that Old American would recognize the partial assignment of the right to benefits to Lincoln Factoring and that Old American would "remit [a] check in payment of the proceeds." Two days later, Old American acknowledged receipt of the claim but stated in a letter that it "need[ed] a copy of the death certificate" to pay it.

In December 2014, Lincoln Factoring sent a demand letter to Old American. Lincoln Factoring asserted that Old American's decision to wait for a final determination of the cause of death before paying the policy's proceeds was an "out of contract demand [that Old American had] no basis to make." Lincoln Factoring's letter stated in part,

> Your company has no right to demand of the claimant under a policy more information concerning the death of the insured than is called for by the terms of the contract or is required by the known and established uses of the insurance business . . . .
>
> A PENDING DEATH CERTIFICATE is proof of death sufficient for your company to pay the proceeds. . . .
>
> . . . .

---

[2]Thus, three individuals or entities—Howard, Lincoln Factoring, and American Capital Funding—eventually made claims for proceeds under Barnes's policy. Only Lincoln Factoring sued Old American for delaying payment of the proceeds.

Under Texas [law], you have a duty to conduct an investigation which includes a phone call to the local police department to determine if the cause of death will be ruled a homicide and if it is, is the beneficiary a suspect.[3]

If the beneficiary is not a suspect[,] you have no basis to hold the claim up. . . . I will make only one demand for payment. If your payment is not forthcoming and if no arrangements are made to satisfy the debt, I will proceed to file a lawsuit immediately against you to collect this debt by all lawful means.

Approximately two weeks later, on December 30, 2014, Old American informed Lincoln Factoring that it was still delaying payment of the benefits. Old American's letter to Lincoln Factoring stated,

Thank you for providing the death certificate for this claim. However, because the cause of death is listed as still being "under investigation," we cannot conclude our claim investigation at this time. The policy has an accidental death benefit rider and the cause of death is required information to determine if the [accidental death benefit] claim is payable. Further, the underlying life claim may be affected if the cause of death is homicide or suicide.

Please provide a death certificate with the cause of death determined . . . as soon as that investigation is concluded.

A little more than a week later, Old American sent a letter to Lincoln Factoring stating that Old American still had not received a completed death certificate and that once Old American received the certificate, it would "proceed with [Lincoln

---

[3]Although Barnes's policy did not contain a homicide exclusion, Texas's "slayer statute" provides that a "beneficiary of a life insurance policy or contract forfeits the beneficiary's interest in the policy or contract if the beneficiary is a principal or an accomplice in wilfully bringing about the death of the insured." Tex. Ins. Code Ann. § 1103.151 (West 2009); *see Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 152 (2001) (stating that slayer statutes have been adopted by nearly every state and that such statutes have a "long historical pedigree").

Factoring's] request for benefits." Old American sent similar letters to Lincoln Factoring in February 2015, March 2015, and April 2015.

In March 2015, in a justice court, Lincoln Factoring sued Old American. Lincoln Factoring asserted that in Old American's delay of paying the benefits, it had violated several provisions within chapters 541 and 542 of the Texas Insurance Code; had committed actionable misrepresentations; had acted negligently; had violated the DTPA;[4] had breached the insurance policy; had committed conversion; had breached the common law duty of good faith and fair dealing; and had tortiously and negligently interfered with property rights. Lincoln Factoring asked for damages of $4,725, the amount of proceeds due under the partial assignment.

Old American received Barnes's final death certificate in June 2015. The certificate described her cause of death as hypertensive cardiovascular disease. Within days of receiving the final certificate, Old American paid all benefits under the policy.

Lincoln Factoring amended its pleading. In the amended pleading, Lincoln Factoring conceded that Old American had paid the benefits but still asserted claims for the recovery of "the interest due, legal fees[,] and money for [Old American's]" alleged breach of the insurance policy; its alleged violation of the DTPA; its alleged breach of the duty of good faith and fair dealing; and its alleged violations of the Texas Insurance Code.

[4]*See* Tex. Bus. & Com. Code Ann. §§ 17.41–.63 (West 2011 & Supp. 2018).

6

After a trial, the justice court signed a judgment decreeing that Lincoln Factoring take nothing. Lincoln Factoring perfected a de novo appeal to the trial court.[5]

In the trial court, Lincoln Factoring again amended its petition. In Lincoln Factoring's second amended petition—its final pleading—it alleged that Old American had delayed payment of benefits "based on terms that . . . were not in the life insurance policy[,] were not defined in the . . . policy[,] and were adverse to state statutes.  In addition, [Old American] failed to reasonably investigate the life insurance claim and made misrepresentations to delay payment." Lincoln Factoring pleaded claims for breach of contract, breach of the duty of good faith and fair dealing, and violations of the DTPA and of several provisions of chapters 541 and 542 of the Texas Insurance Code.

Each party filed a motion for summary judgment. Lincoln Factoring argued that its lawsuit was

> about an insurance company who delayed payment of a life insurance policy for eight months based on terms that . . . were not in the life insurance policy; were not defined in the life insurance policy; and were adverse to state statutes. In addition, the insurance company failed to reasonably investigate the life insurance claim and made misrepresentations about the life insurance policy to delay payment.

After considering the motions and responses to the motions, the trial court granted Lincoln Factoring's motion and denied Old American's motion. The court

---

[5] *See* Tex. R. Civ. P. 506.1(a), (h), 506.3.

ordered that "judgment be entered in favor of Lincoln Factoring . . . for all its claims." In its judgment, the trial court did not award Lincoln Factoring any actual damages. But the court ordered Old American to pay Lincoln Factoring $9,450 in "treble damages," $1,050 in "interest," attorney's fees of $12,000, and costs. Old American brought this appeal.

## As a Matter of Law, Lincoln Factoring Is Not Entitled to Relief on the Claims it Pleaded

On appeal from the trial court's judgment, Old American raises several issues that relate to Lincoln Factoring's standing, the merits of Lincoln Factoring's claims, and the relief that the trial court awarded on those claims. Old American asserts that we should render a take-nothing judgment because Lincoln Factoring has "no right of recovery . . . on any claim in its pleadings." For the reasons that we explain below, we agree.

### Lincoln Factoring's claims under chapter 541 and for violation of the common law duty of good faith and fair dealing[6]

In its briefing on appeal, Old American contends that we should render a take-nothing judgment because, among other reasons, Lincoln Factoring did not sustain any actual damages as a result of Old American's acts or omissions related to its chapter 541 and good-faith-and-fair-dealing claims, and without an award of actual

---

[6]On appeal, Lincoln Factoring asserts that it did not seek summary judgment on its DTPA claim and appears to abandon that claim. To the extent, however, that Lincoln Factoring has not abandoned its DTPA claim, the analysis in this section of the opinion would apply with the same force to the DTPA claim.

damages, Lincoln Factoring could not obtain treble damages or other relief.[7] We hold, as explained below, that with respect to Lincoln Factoring's claims under chapter 541 and for violation of the common law duty of good faith and fair dealing, (1) the trial court *did not* award actual damages; (2) under the evidence in this case, the trial court *could not* award actual damages; and (3) without an award of actual damages, the trial court could not award treble damages or other relief, including attorney's fees. We therefore conclude that the trial court erred as a matter of law by granting relief to Lincoln Factoring on these claims.

---

[7]Old American raises these arguments in its seventh and ninth issues of its opening brief. In the summary of the argument in its opening brief, Old American asserts, "Lincoln [Factoring] did not sustain any actual damages . . . . Therefore, there is no basis for treble damages . . . ." Later in the body of its opening brief, Old American argues, "Lincoln [Factoring] has no actual damages as a matter of law and there is no legal basis for an award of treble damages."

We recognize that Old American did not raise issues concerning damages in the trial court. But a summary-judgment nonmovant may raise, for the first time on appeal, the legal sufficiency of evidence supporting grounds for relief presented by the movant. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 512 (Tex. 2014); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) ("[T]he non-movant needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient *as a matter of law* to support summary judgment."); *see also Clear Lake Ctr., L.P. v. Garden Ridge, L.P.*, 416 S.W.3d 527, 540 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating that a summary-judgment movant has the burden to conclusively establish its damages); *First Select Corp. v. Grimes*, No. 02-01-00257-CV, 2003 WL 151940, at *3 (Tex. App.—Fort Worth Jan. 23, 2003, no pet.) (mem. op.) (stating the same). We construe Old American's seventh and ninth issues as challenging the legal sufficiency of the evidence to justify any award of damages on Lincoln Factoring's claims under chapter 541 and for breach of the duty of good faith and fair dealing.

Section 541.151 of the insurance code allows a person "*who sustains actual damages*" from a defendant's unfair or deceptive insurance practice[8] to bring an action "for those damages." Tex. Ins. Code Ann. § 541.151 (West 2009) (emphasis added). A plaintiff who prevails in an action under section 541.151 may obtain "the amount of actual damages, plus court costs and reasonable and necessary attorney's fees." *Id.* § 541.152(a)(1) (West Supp. 2018). Also, such a plaintiff may obtain treble damages— "an amount not to exceed three times the amount of actual damages"—if the defendant committed the unfair or deceptive act knowingly. *Id.* § 541.152(b); *see Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 9 (Tex. 1991) (stating that an award of treble damages is "punitive in nature and designed to deter violations" of the insurance code). Texas law also recognizes a cause of action for damages for a breach of the common law duty of good faith and fair dealing owed by insurers to insureds and beneficiaries. *See Viles v. Sec. Nat'l Ins. Co.*, 788 S.W.2d 566, 567 (Tex. 1990); *Arnold v. Nat'l Cty. Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167–68 (Tex. 1987).

Chapter 541 claims and claims for breach of the duty of good faith and fair dealing are tort claims that are independent from a claim for breach of an insurance contract. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489 (Tex. 2018). To

---

[8]Subchapter B of chapter 541—sections 541.051 through 541.061—delineates unfair and deceptive insurance practices that may serve as grounds for a lawsuit under section 541.151. *See* Tex. Ins. Code Ann. §§ 541.051–.061 (West 2009 & Supp. 2018). Lincoln Factoring pleaded claims under sections 541.051, 541.052, 541.060, and 541.061.

recover any damages beyond policy benefits for such claims, the "statutory violation or bad faith must cause an injury that is independent from the loss of benefits." *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 848 (Tex. App.—Houston [14th Dist.] 2017, pet. filed) ("It is undisputed that Hurst had a right to receive benefits under the insurance policy, and we have held that he received those benefits . . . . In order to recover any damages beyond policy benefits, the statutory violation or bad faith must cause an injury that is independent from the loss of benefits."); *see Menchaca*, 545 S.W.3d at 500 ("[A]n insurer's statutory violation does not permit the insured to recover *any* damages beyond policy benefits unless the violation causes an injury that is independent from the loss of the benefits."); *Biasatti v. GuideOne Nat'l Ins. Co.*, No. 07-17-00044-CV, 2018 WL 3946352, at *3 (Tex. App.—Amarillo Aug. 16, 2018, pet. filed) ("[A]n insured can recover actual damages caused by the insurer's statutory violation or bad-faith conduct only if the damages are separate from and differ from benefits under the policy. Consequently, we disagree that the requisite 'independent injury' can be predicated on policy benefits which have already been paid."); *Turner v. Peerless Indem. Ins. Co.*, No. 07-17-00279-CV, 2018 WL 2709489, at *4 (Tex. App.—Amarillo June 5, 2018, no pet.) (mem. op.) ("[W]hen benefits are paid per the contract . . . , an insured may still pursue extra-contractual causes of action but only when they are not founded upon the loss or injury allegedly covered by the policy. That is, they must be founded on an act that caused injury independent of the policy claim."); *see also Powell Elec. Sys., Inc. v. Nat'l Union Fire Ins. Co.*, No. H-10-993, 2011 WL 3813278,

11

at *9 (S.D. Tex. Aug. 29, 2011) (granting summary judgment for the insured on its breach-of-contract claim but for the insurer on common-law and statutory claims because the insured "failed to allege damage independent of the damages arising from the underlying breach of the insurance contract"); *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 438 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (holding that a plaintiff could not assert a chapter 541 claim as a matter of law because the plaintiff had "received the benefits to which he was entitled under the policy and ha[d] not alleged any act so extreme as to cause independent injury").

Here, perhaps because the evidence conclusively showed that Old American paid all benefits under Barnes's insurance policy, the trial court did not award any actual damages. And under the cases cited above, the trial court *could not* have awarded such damages because the record does not contain any allegation or proof that Lincoln Factoring suffered an injury that was independent of the benefits it sought under the policy; instead, the record conclusively shows that the damages for which Lincoln Factoring pleaded and presented evidence flowed from the denial of policy benefits.[9] *See Menchaca*, 545 S.W.3d at 500 (explaining that an injury is not "independent" from the right to receive policy benefits if the injury "flows" or

---

[9]In Lincoln Factoring's original petition that it filed in justice court, it pleaded for damages of $4,725, the amount due under the partial assignment of the policy. Lincoln Factoring sought the same actual damages in its first amended petition, also filed in justice court. In its second amended petition, its live pleading, Lincoln Factoring did not plead that it sustained an injury that was not associated with Old American's delay of paying benefits under the policy.

"stems" from the denial of that right); *Hurst*, 523 S.W.3d at 848. Thus, with respect to Lincoln Factoring's claims under chapter 541 and for breach of the duty of good faith and fair dealing, we hold both that (1) the evidence is legally insufficient to prove any actual damages, and (2) as a matter of law under the facts presented, where there is no allegation or evidence of an independent injury, such damages cannot be awarded.

Although the trial court did not award actual damages, it awarded $9,450 in "treble damages" and $12,000 in attorney's fees, presumably under section 541.152. *See* Tex. Ins. Code Ann. § 541.152(a)(1), (b). But without an award of actual damages, the trial court could not award treble damages. *See id.* § 541.152(b) (stating that when a defendant knowingly commits an act that violates chapter 541, the "the trier of fact may award an amount *not to exceed three times the amount of actual damages*" (emphasis added)); *Allstate Indem. Co. v. Hyman*, No. 06-05-00064-CV, 2006 WL 694014, at *11 (Tex. App.—Texarkana Mar. 21, 2006, no pet.) (mem. op.) (stating that section 541.152 "limits a plaintiff's recovery to three times actual damages"); *Household Fin. Corp. III v. DTND Sierra Invs., LLC*, No. 04-13-00033-CV, 2013 WL 5948899, at *12 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op.) ("In the absence of actual damages, there is nothing to treble."). Thus, the trial court's award of $9,450 in "treble damages" in the absence of an award of actual damages cannot be sustained. Further, without awarding actual damages, the trial court could not award attorney's fees under chapter 541, and the award of $12,000 in attorney's fees is likewise not

sustainable.[10] *See* Tex. Ins. Code Ann. § 541.152(a)(1); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995); *Guidry v. Envtl. Procedures, Inc.*, 388 S.W.3d 845, 860 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) ("A plaintiff who does not recover actual damages cannot recover attorneys' fees under the Insurance Code.").

For all of these reasons, assuming, without deciding, that Lincoln Factoring proved otherwise meritorious claims[11] of Old American's unfair or deceptive insurance practices under chapter 541 and of Old American's breach of the common law duty of good faith and fair dealing, we hold that as a matter of law under the evidence contained within the record, Lincoln Factoring is not entitled to relief based on those claims. Thus, we sustain Old American's seventh and ninth issues, and we will reverse the trial court's judgment with respect to those claims and render judgment for Old American.[12] *See* Tex. R. App. P. 47.1; *Beaston*, 907 S.W.2d at 435–38

---

[10]Lincoln Factoring alternatively contends that the trial court could have awarded attorney's fees in response to a declaratory judgment counterclaim asserted by Old American. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 2015). As Old American asserts, however, Lincoln Factoring did not seek summary judgment for attorney's fees on that basis; we cannot affirm a summary judgment on a ground not moved upon. *See Stiles v. Resolution Tr. Corp.*, 867 S.W.2d 24, 26 (Tex. 1993).

[11]Lincoln Factoring argues that Old American waived challenges to the merits of some of the chapter 541 claims. Because we assume, without deciding, that the chapter 541 claims were meritorious on liability, we need not examine the argument of waiver. *See* Tex. R. App. P. 47.1

[12]Although Old American did not seek summary judgment on the damages issue, under the particular circumstances presented here that foreclose relief, it "would be a useless and idle ceremony to reverse and remand," so we render judgment "in accord with . . . the inevitable result." *See Parrish v. Frey*, 44 S.W. 322, 325–26 (Tex.

14

(declining to address the merits of a jury's finding that defendants engaged in an unfair or deceptive insurance practice because the only damages awarded by the jury were reversible for a reason independent of the liability finding).

**Lincoln Factoring's claims under chapter 542**

In its second issue, which concerns Lincoln Factoring's chapter 542 claims, Old American contends that under the plain language of the provisions under which Lincoln Factoring sued, Lincoln Factoring does not have standing.[13] Lincoln Factoring brought claims under sections 542.003, 542.055, 542.056, and 542.058 of the insurance code. Old American argues that Lincoln Factoring lacks standing under section 542.003 because that section does not provide for a private cause of action. Old American further contends Lincoln Factoring lacks standing under the other sections because claims under those sections may only be brought by an insured or a named beneficiary. We agree with these contentions.

"Standing" is a question of law that generally concerns whether a plaintiff has a sufficient justiciable interest in a suit's outcome to be entitled to a judicial

Civ. App.—Austin 1898, writ ref'd); *see also Mackey v. Lucey Products Corp.*, 239 S.W.2d 607, 608 (Tex. 1951) ("The law does not require the doing of a vain and useless thing, and by our opinions and judgments we will not so require."); *Ware v. Miller*, 82 S.W.3d 795, 804 (Tex. App.—Amarillo 2002, pet. denied) ("As a matter of public policy, courts do not require performance of useless acts.").

[13]Old American did not challenge Lincoln Factoring's standing in the trial court. Because standing is a component of subject matter jurisdiction, it may be challenged for the first time on appeal. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 484 (Tex. 2018).

determination. *In re H.S.*, 550 S.W.3d 151, 155 (Tex. 2018). If a plaintiff does not have standing to assert a claim, a court lacks subject-matter jurisdiction to decide it. *Id.*; *see Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) ("Standing is a constitutional prerequisite to suit.").

When standing has been conferred by statute, the statute serves as the proper framework for the standing analysis. *In re Russell*, 321 S.W.3d 846, 856 (Tex. App.—Fort Worth 2010, orig. proceeding [mand. denied]). In such a case, we must determine "upon whom the Texas Legislature conferred standing and whether the claimant in question falls in that category." *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding [mand. denied]). "For statutory standing to apply, the plaintiff must allege and show how he has been injured or wronged within the parameters of the statutory language." *Hernandez v. Truck Ins. Exch.*, 553 S.W.3d 689, 698 (Tex. App.—Fort Worth 2018, pet. filed).

Section 542.003, a provision within the Unfair Claim Settlement Practices Act,[14] states that an insurer may "not engage in an unfair claim settlement practice" and provides a list of practices that are unfair. Tex. Ins. Code Ann. § 542.003(a)–(b). The Act provides for administrative enforcement of its terms by the Texas Department of Insurance and does not explicitly create a private cause of action for violations. *Id.* §§ 542.008–.012. State and federal courts in Texas have repeatedly held that violations

---

[14]*See* Tex. Ins. Code Ann. §§ 542.001–.014 (West 2009 & Supp. 2018).

of the Act, including violations of section 542.003, may not be litigated through a private lawsuit brought against the insurer. *See Terry v. Safeco Ins. Co. of Am.*, 930 F. Supp. 2d 702, 714 (S.D. Tex. 2013) ("The 'Terrys' claims fail because there is no private right of action under the Unfair Settlement Practices Act."); *Great Am. Assur. Co. v. Wills*, No. SA-10-CV-353-XR, 2012 WL 3962037, at *2 (W.D. Tex. Sept. 10, 2012) (agreeing that "only the Texas Department of Insurance can bring a claim under section 542.003"); *First Am. Title Ins. Co. v. Patriot Bank*, No. 01-14-00170-CV, 2015 WL 2228549, at *7 (Tex. App.—Houston [1st Dist.] May 12, 2015, no pet.) (mem. op.) (holding that there is no private cause of action for violations of section 542.003). We agree with these decisions and hold that Lincoln Factoring does not have standing to litigate a claim under section 542.003.[15]

Lincoln Factoring also pleaded causes of action under subchapter B of chapter 542, which concerns the prompt payment of "claims." *See* Tex. Ins. Code Ann. §§ 542.051–.061 (West 2009 & Supp. 2018). When an insurer is liable for not promptly paying a "claim" under the provisions of subchapter B, the trial court may order the insurer to pay the amount of the "claim" and "interest on the amount of the claim at the rate of 18 percent a year as damages." *Id.* § 542.060(a).[16]

---

[15]Lincoln Factoring concedes the same, stating with respect to its claim under section 542.003 that a "remedy is only available to the Department of Insurance."

[16]We presume that the trial court's $1,050 award of "interest" flowed from section 542.060(a).

17

Under the statute's explicit language, a "claim" that is subject to the provisions of subchapter B is a first-party claim that is "made by an insured or policyholder under an insurance policy or contract *or by a beneficiary named in the policy or contract*" and that "must be paid by the insurer *directly to the insured or beneficiary*." *Id.* § 542.051(2)(A)–(B); *see also id.* §§ 542.055, .056, .058 (delineating requirements for the processing and payment of a "claim"), § 542.060 (providing for a cause of action when an insurer is liable for a "claim" and violates a provision of the subchapter); *State Farm Life Ins. Co. v. Martinez,* 216 S.W.3d 799, 802 (Tex. 2007) (stating that the "statute defines a 'claim' to . . . limit coverage to beneficiaries named in the policy"). Under the plain meaning of subchapter B,[17] only a beneficiary named in a policy or contract may sue for an insurer's acts with respect to a "claim." *See Martinez,* 216 S.W.3d at 802; *see also DeLeon v. Lloyd's London,* 259 F.3d 344, 354 (5th Cir. 2001) (stating that the prompt payment statute concerns the "relationship between the insurer and the 'named' beneficiary— not the lawful, yet unnamed beneficiary," and holding that the statutory interest

---

[17]We apply the plain meaning of a statute as expressed through its language unless a different meaning is apparent or unless doing so would lead to an absurd result. *State v. T.S.N.,* 547 S.W.3d 617, 621 (Tex. 2018). We also note that the penal character of insurance code remedies supports limiting the scope of plaintiffs who may plead for them. *See Houston Sash & Door Co. v. Heaner,* 577 S.W.2d 217, 222 (Tex. 1979) (stating that civil statutes "of a penal nature are to be strictly construed" and holding that forfeiture provisions of a usury statute were "restricted to the immediate parties to the transaction"); *Micrea, Inc. v. Eureka Life Ins. Co. of Am.,* 534 S.W.2d 348, 354 (Tex. Civ. App.—Fort Worth 1976, writ ref'd n.r.e.) ("Our statutes relative to penalty are to be enforced strictly in accordance with their terms. Rights of redress provided thereby are therefore to be restricted . . . .").

18

penalty did not apply because the plaintiff was not named in the policy as a beneficiary); *Sparkman v. Reliastar Life Ins. Co.*, No. 13-03-00500-CV, 2008 WL 2058216, at *9 (Tex. App.—Corpus Christi May 15, 2008, pet. denied) (mem. op.) (stating that the prompt-payment provisions limit causes of action "to a beneficiary named in the policy" and concluding that the provisions did not "provide relief to a party who [was] not named a beneficiary in the policy or contract but [was] merely deemed [a] proper beneficiary after litigation").[18] We reject Lincoln Factoring's contention that its position among the category of claimants who may sue under chapter 542 is a matter of capacity, which cannot be litigated for the first time on appeal, rather than a matter of standing, which can. *See Sullivan*, 157 S.W.3d at 915; *cf. Fitness Evolution, L.P. v. Headhunter Fitness, L.L.C.*, No. 05-13-00506-CV, 2015 WL 6750047, at *17–18 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op. on reh'g) (holding that the assignability of a common law claim was an issue of capacity, not standing, and that the capacity issue had not been preserved through a verified pleading in the trial court).

We hold that Lincoln Factoring, which was not the insured, policyholder, or beneficiary named in the policy or contract—but rather was a partial and successive

---

[18]The cases that Lincoln Factoring relies on to support its standing to assert a chapter 542 prompt payment claim are inapposite because those cases discuss provisions of other statutes and do not address the definition of a "claim" under section 541.051. *See, e.g.*, *Tango Transp. v. Healthcare Fin. Servs. LLC*, 322 F.3d 888, 890–91 (5th Cir. 2003) (discussing standing under a federal statute).

19

assignee of benefits from the named beneficiary—does not have standing to assert prompt payment claims under sections 542.055, 542.056, and 542.058. *See* Tex. Ins. Code Ann. § 542.051(2)(A). Thus, we sustain Old American's second issue, which requires us to reverse the trial court's $1,050 award of "interest."

**Lincoln Factoring's breach of contract claim**

Finally, Old American contends in its fourth issue, as it argued in the trial court, that its payment of proceeds to Lincoln Factoring, albeit later than Lincoln Factoring requested, forecloses Lincoln Factoring's claim for breach of contract.[19] Lincoln Factoring appears to concede as much, stating, "An insurance policy is a contract, and once Old American finally paid the $10,000 'death benefit,' Lincoln could not recover for breach of contract." The elements of a breach of contract claim are the existence of a valid contract, performance or tendered performance by the plaintiff, breach of the contract by the defendant, and resulting damages to the plaintiff. *Rice v. Metro. Life Ins. Co.*, 324 S.W.3d 660, 666 (Tex. App.—Fort Worth 2010, no pet.). We hold that because Old American fully paid the benefits under Barnes's life insurance policy, Lincoln Factoring, the partial assignee of the beneficiary's interest in the policy, cannot prove a breach of the contract and succeed on its breach of contract claim. *See Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 776 (Tex. 2006) ("As the claim was paid

---

[19]An assignee of insurance benefits may sue an insurer for breach of contract. *See 1 Lincoln Fin. Co. v. Am. Family Life Assur. Co. of Columbus*, No. 02-12-00516-CV, 2014 WL 4938001, at *4 (Tex. App.—Fort Worth Oct. 2, 2014, no pet.) (mem. op.).

shortly after suit was filed, no breach of contract claim remains."); *see also Ressler v. Gen. Am. Life Ins. Co.*, 561 F. Supp. 2d 691, 697 (E.D. Tex. 2007) ("Even assuming a breach of contract claim was pleaded, the court finds summary judgment on such a claim to be proper as Defendant has paid the Policy in full and the investigation causing the delay in payment was as a matter of law not a breach of the Policy."). To the extent that the trial court's final judgment rests on Lincoln Factoring's breach of contract claim, we hold that it is erroneous and sustain Old American's fourth issue.

## Conclusion

For all of these reasons, based on principles of evidentiary insufficiency and standing, we hold that as a matter of law, Lincoln Factoring is not entitled to relief on the claims that it pleaded. Having sustained Old American's second, fourth, seventh, and ninth issues, which are dispositive,[20] we reverse the trial court's final judgment and render a take-nothing judgment.

/s/ Wade Birdwell
Wade Birdwell
Justice

Delivered: November 8, 2018

---

[20]We decline to address Old American's other issues. *See* Tex. R. App. P. 47.1.